Judge Underwood
delivered the opinion of the court.
On the 14th July, 1796, a grant issued to Isaac Shelby, for 800 acres of land. On the 29th July, 1811, said Shelby conveyed 400, partof said 800 acres to Ann Fox, and on the 12th May, 1819, he conveyed the residue to Charles S. Todd, and wife. Todd conveyed the land to the President, Directors, and Company, of the Bank of Kentucky. On the 24th *257 December, 1821, his wife uniting with him, so far as to convey her right of Dower. On the-day of --Shelby, Todd and wife, and the President, Directors, and Company of the Bank of Kentucky, as lessors of the plaintiff, instituted an action of ejectment against the widow and children, of David M Williams, deceased, to recover the possession of a part of the land^ claimed by the lessors, and which was possessed by the defendants. A verdict was found for the defendants, on which the court rendered judgment in their favor; to .reverse which, the lessors of the plaintiff have appealed to this court.
The defendants claimed, under a grant from the commonwealth, to Caleb Calloway, dated the 2d. April, 1798; and a deed from Richard Galloway, attorney in fact, for said Caleb, dated 28th October, 1806, to David MiWilliams, deceased. It is clear, that the plaintiff should have succeeded, if the right of- entry in his lessors, had not been barred by the statute of limitations. Whether the evidence justified the jury in'finding for the defendants, predicating their finding, upon the existence of- such a bar, is therefore, the first question for consideration.
The proof is clear, that David M‘Williarhs settled on the land, common to both patents, as early as the year 1800; and that he and his widow, and children, continued to live on the land, from the date of his settlement, up to the time the suit was brought, corn stituting a period of more than twenty years. It is equally clear, that they set up claim.to the land, and that their possession was adverse to the title asserted by the lessors of the plaintiff. If, therefore, the possession of M‘Williams, at the time he entered on the land, can be considered as extending to the'boundary of his deed, then he and his heirs, will not be confined to the actual enclosure, but the right of entry, in the lessors of the plaintiff will be tolled to the extent of the land in controversy.
It is satisfactorily established, that M‘Williams entered under a contract with Calloway, by which M‘Williams may be regarded as a purchaser, although his deed was not obtained until 1806. If he. entered in that character, the presumption is" strong, that it *258 was well understood, by express stipulation between him and Calloway, what were the boundaries of the' land, bought by the one, and sold, by the other; and that when M’Williams entered, he was possessed, in virtue of Ms entry, to the extent of the boundary agreed on*
The evidence removes all doubt, if any could exist, The testimony of Crooke, the surveyor, who laid off the land for M‘Williams, fixes the time anterior to McWilliams’s entry' and settlement; and, although he does not speak positively on the subject; still we confide in his statement, because it is reasonable, that men should have acted as he represents Calloway and MtWilliams to have dpne, before M‘Williams commenced his improvements.
Things which are reasonable, such as laying off the land, or adjusting the boundary, by definite descrip* tion, &c., prudent sellers and purchasers, generally, if not invariably attend to, before -the possession is transferred. They shpuld do it, in order to prevent after misunderstanding. There is nothing in this cause, which creates a suspicion, that the boundary was not certainly fixed, and agreed on, before M’WiI-liams entered. All the evidence conduces to a contrary belief. It was, so far as the bond in controversy is embraced, a marked boundary, common to Calloway’s patent, and M‘Williams’s deed; and we are of opinion, that in virtue of D. M‘Wiliiams’s entry and residence upon the land, from 1800, till his death, and the continued possession of his widow and children, since that time, the right of entry in the lessors of the plaintiff, was tolled before the institution of the suit, by a continued adverse possession, of more than twenty years, covering- the whole land in controversy.
The division of the land hetween Shelby and Fox, and the conveyance of that part of the land to Fox, which included the houses and. actual residence of M‘Williams, in 1811, cannot operate so as to benefit the lessors of the plaintiff. The statute of limitations commenced running from the time M‘Wiliiams entered and settled within the bounds of Shelby’s patent; the possession of M‘Williams extended to the limits of the land now in controversy; and no *259 subsequent division and sale by Shelby, could stop the running of the statute, or limit M’Williams’s possession, to the dividing line between Shélby and Fox. Thelatvof the case would, therefore, be the M‘Wiiliams had not, twenty years before suit was brought, extended his clearing across the dividing line between Shelby and Fox, up to the dotted line, 1, 2, as marked on the plat.
The plaintiff’s attorney gave notice to Wm. M‘Williams, one of the defendants, to produce on the trial, the original title bond, which Calloway executed to David M‘Williams. It does not appear that the title bond was produced; and therefore, a motion was made to exclude so much of the testimony of Crooke, as went to prove a contract between Calloway and David M‘Williams, deceased, prior to the date of the deed of 1806. The court overruled the motion, to which the plaintiff excepted. The plaintiff predicated his motion to exclude, upon the testimony given by a witness, who proved, that four or five years previous to the trial, he heavd William M’Williams say, that he then had in his possession the original title bond from Calloway to his father. We perceive no error in overruling the motion. Crooke did not, in giving evidence, pretend to detail the contents of the title bond. It did not appear that Crooke knew that a title bond had ever been executed. He spoke of Calloway and David M’Williams coming to his house, and talking about a trade for the land, in 1798, and his laying off tile land for M’Williams in that year; and that he made the survey so that Calloway might make a deed by it.
It may be inferred from all this, that a contract had been entered into between Calloway and M’Williams; but whether verbal or written, is altogether presumptive; and what were its terms is wholly uncertain. But, whatever may have been the nature and terms of the contract, we do not perceive how it could have varied the effect of the facts proved by Crooke, to,wit: the laying off the land for M‘Williams, and his entry upon it as the purchaser, and improving it.
It is surely not our duty to infer^that the title bond contained stipulations which would have rendered *260 these facts unavailing to the defendants in tbeir de» fence, merely because the bond was not produced. Besides, the plaintiff having given notice, he thereby the- right to give in evidence, the contents of bond, if there was any thing in it which could have destroyed the validity of the defence. . This he seems riot to have attempted. Besides,the presump-^on was’ ^ad ^een surren^ere(^ w^en the deed was executed; and, as the motion was based upon proving the confession of one of the defendants, which could not operate against the others, and there was nothing to shew that the defendants had power over the title bond at the time of the trial, except an inference to be drawn from the statement of one of them, that he had the bond four or five years before, the court, very properly, left the whole of Crooke’s evidence with the jury for their consideration.
«otioeuTro' ducebond^0 may prove its not T d’ d p '
Confession of one de’ft. no gainst co-. def’t.
Intended wit-nesais some, teat °0mpe'
Having reached the conclusion that the jury were warranted in finding for the defendants, under the statute of limitations, we shall inquire whether there is error in any point presented by the bill of exceptions, which could have prejudiced the lessors of the plaintiffs.
Fields, a stockholder in the Bnnk'of Kentucky, was offered as a witness, by the plaintiff. His testimony was objected to and excluded, upon the ground that he was incompetent. It is contended that Fields was a competent witness, ex necessitate. It is laid down in elementary books, and in many adjudged cases, that persons possessing an interest, may sometimes be admitted from a principle of necessity. Peaks Evidence, 150; Starkie, 753, and the cases referred to by them. The court must judge of the existence of this necessity, from the circumstances of each case, for no one ought to be admitted to testify in his own behalf or to give evidence in behalf of his own interest, unless it appears that the fact which is to be established could not, from its nature, be proved by a disinterested person. Nor will it be sufficient, to induce the court to receive such evidence, for the party to state that he is remediless, unless his own oath, or that of a person interested, can be taken. If Ro mere wqs required, it would put it in the power of *261 every man to fabricate causes of action, and to sustain them by his own oath. This would, in a great degree, subvert that leading principle which, as a general rule, excludes the testimony of interested The exceptions to the general rule ought not to be favored, much less should they be extended without the most obvious necessity. The cases in which interested persons may be admitted to testify, may be thrown into two classes. 1st. Those which, from the confined nature of the transactions, render it exceedingly improbable that any person, not interested, should possess any knowledge of the facts. And, 2d. Those which, from the generality of the interest, render it equally likely that all persons having a knowledge of the facts, are interested. Thus, a servant who has paid money, or a porter who delivers out or receives parcels, in the common course of business, may give evidence whereby he charges another, although, thereby, he exonerates himself from liability. This is tolerated upon the principle of necessity, such personshaving generally, exclusive knowledge of the facts, and without admitting them, it wbuld be almost impossible to prove the facts. In the case, of Rex vs. Mayor, &c. of London, II. Lev. 231, a case where the right of the city to toll on coals, came in question, and where the toll was for the benefit of the corporation at large, and no individual citizen had an exclusive benefit, there the freemen were held good witnesses, upon the principle of necessity, from the generality of the interest. But cases of this latter diseription seem not to have met with the unanimous sanction of all the judges. See King vs. Carpenter, II. Show, 47.
Servant pay-ins “«ny, or erinegootís' in common ’ course of buii-”etent wiS' ness to charge another, al-ího’ tbc?e" himself.*0* ^
The facts which Field? was called on to prove, are not stated in the bill of exceptions. We have, therefore, no means of judging, from the particular circumstances, the degree of necessity which existed for admitting his testimony, and we are very far from acknowledging that it should be established as a general rule, that all stockholders in the Bank of Kentucky are competent witnesses, in cases where the corporation is concerned, upon a principle of necessity, because of the generality of the interest in that institution. Indeed, we are not prepared to say jhat there is any case where such stockholders should *262 |je admitted in bebalf of the bank. If there be such a case, we shall leave it for decision, when the whole circumstances, showing the necessity for a departure from the general rule, shall be presented fully. Fields, a« "one of the company, had a direct interest in the suit, aad for any thing appearing to us, was properly rejected as a witness.
The certificate of William S. Waller, and all the evidence dependant upon it, was likewise, properly rejected. Admitting the proof, that he was cashier of the bank, to be satisfactory, still we are not apprised of any law, which gives to his certificates of the proceedings of the Board of Directors, such validity, as to render them equivalent to the authentication of a record, by the proper officer having it in his custody. Such seems to have been the intent of the plaintiT, offering Waller’s certificate. The court very properly refused to indulge it.
The whole of the evidence offered, relative to the purchase of the land from the agents of the bank, and the occupation of the land, under the bank, seems to us to have been irrelevant, and ought not to have operated upon the jury, in coming to a conclusion; because, before'the bank had any title, and before she pretended to sell, the defendants were protected by twenty years’ adverse possession. We, therefore, deem it useless to investigate this part of the cause any further. If the defendants were not protected by such previous adverse possession, the plaintiff should have recovered. If they were so protected, the excluded evidence would not give the plaintiff a right to recover.
The testimony of Alexander M. Barnett was properly rejected; at least it does not appear to us that it was rejected improperly. He had bought the land, and assigned his title bond. Unless the land was obtained he might be responsible on his assignment. It does not appear that he would not have been. We cannot infer, that he was discharged from the length of time, he made the assignment, previous to his being called on to testify. His assignee, for aught that appears, had no right of action on the bond, before the trial of this suit. We do not know that the title *263 should have been previously made; nor does it appear what Barnett was introduced to prove.
Court may, at request of "alter t¡1(!jr retirement.
We perceive no error in the refusal of the court, to reduce the instructions given the jury, to writing. The bill of exceptions, purports to set out the identical words, in which the instructions were given. If the instructions were given while the jurors were standing in a crowd around the judge, (instead of being seated on their bench, as is stated, it is a question which must be left for decision, to the sense of decorum and order, which should influence the circuit judges, and furnishes no matter, for. the revision.' of this court. The only question with us, is, were the instructions correct? We perceive nothing in the instructions, calculated in the least, to do injustice to the plaintiff, by influencing the jury, to find, contrary to law. It was unnecessary for the court, to have said any thing, in relation to an entry by the plaintiff his lessors, or those claiming under them, or either of them, upon the land common to the claims of each party, within twenty years, next after the entry, and settlement, of D. M1 Williams, because there was no evidence, of any such entry. What the court did say on the subject, was intended for the benefit of the plaintiff, and if it was not strict law, as it could not possibly benefit the defendants, we will not reverse the case on that account. All that was said about the entry of the plaintiff, within said twenty years, was merely abstract.' An erroneous instruction, upon an abstract proposition, which' could not mislead the jury,in deciding the merits of the cause, will not be regarded by us, as sufficient cause for reversal, when the record shews, that the verdict was right.
The instructions were given by the court, at the instance of the jury, after the argument had been closed, and after the jury had returned to their room, It is insisted, that this was erroneous, unless the parties had consented to it. We think otherwise. It is the duty of the court, to instruct the jury, in matters of law, after the jury have retired, should the jury think proper to'request it. In practice, its results are beneficial, tending to a correct and despatchful administration of justice. The case of Bell vs. *264 North, IV Littell, 133; proves the propriety, of giving instructions, on the application of either party, after argument, notwithstanding a rule of the circuit court, to the contrary. It is equally proper, to instruct the jury at their request, after they have retired to consult of their verdict.
Turner and Crittenden, for appellants; Caperlon, for appellees.
The judgment of the circuit court is affirmed without costs, as the appellees have not entered their appearance in this court.